EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ
GONZÁLEZ MARTÍNEZ, acusado y apelante.

Núm. 7362.—*Sometido:* Enero 27, 1939. *Resuelto:* Febrero 10, 1939.

*E. Martínez Avilés,* abogado del apelante; *R. A. Gómez, Fiscal, y Luis
Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del
tribunal.

El primer señalamiento levanta una cuestión ju-
risdiccional. La contención es que la prueba dejó de de-
mostrar que el delito fué cometido en el barrio Domingo
Ruiz de Arecibo, según se alega en la acusación.

Lino Quiñones, víctima de un atentado criminal, fué lle-
vado en estado moribundo inmediatamente después de ser
agredido al hospital municipal de Arecibo, donde fué iden-
tificado por un policía y asistido por el cirujano del hospital.

Felícita López, esposa de Quiñones, vivía en Bajadero, Arecibo. Quiñones fué llamado mientras dormía a media noche y atacado al salir por la puerta de la casa en que él y su esposa, Felícita, vivían. Bajadero era un poblado de Arecibo.

Juan González vivía en Bajadero, a unas cuantas yardas de distancia del sitio donde se cometió el delito. Un policía llegó como a los cinco minutos del atentado. El delito se cometió en un sitio llamado Buenavista, como a ocho o diez yardas del poblado. La casa de Juan González se hallaba como a quince yardas de la del acusado José González, la que estaba bastante cerca de la casa de Quiñones.

Antonio Natal vivía en Bajadero cerca de la casa de Lino Quiñones y mientras se hallaba acostado oyó a Carmelo Irizarry, un coacusado, llamar a Quiñones.

Rita Natal, otra testigo, también vivía en Bajadero, tan cerca del sitio del suceso que podía ver desde la puerta de su casa lo ocurrido.

Emigdio Sánchez, maestro de escuela, conoció a José González y a Lino Quiñones en el barrio Bajadero, donde vivía el testigo. Este testigo, mientras se hallaba acostado, oyó gritos de mujeres, se puso los pantalones y el gabán, corrió hacia el sitio donde se cometió el delito y llegó allí con el policía Padilla como cinco minutos después de haber oído los gritos. Algunos minutos más tarde halló el vehículo en que llevaron a Quiñones al pueblo.

El policía Padilla prestaba servicios en Bajadero, barrio Domingo Ruiz. Como a media noche y mientras se hallaba en el poblado de Bajadero oyó gritos llamando a un policía. "Era Esteban Quiñones", hijo de Lino Quiñones, quien le dijo al testigo "que corriera allá" y el testigo fué a dicho lugar. El testigo cogió al herido y lo entregó a unos paisanos que lo condujeron al pueblo. El testigo entonces arrestó a José González y a Carmelo Irizarry y los llevó a Arecibo por la Central Cambalache. El testigo entregó al

fiscal el machete que según él José González le había entregado como el arma con que González hirió a Quiñones.

De la declaración de Irizarry como testigo de la defensa se desprende que poco después de cometido el delito y aquella misma noche Irizarry prestó declaración ante el fiscal de Arecibo que más tarde radicó la acusación.

Aparentemente, por accidente más bien que por designio, se estableció bastante bien el hecho de que el delito se cometió en un sitio conocido por Bajadero, un grupo de casas en el municipio de Arecibo, o en las inmediaciones de ese sitio. Que el municipio de Arecibo está dentro del distrito judicial de Arecibo es cuestión de conocimiento judicial. *Pueblo* v. *Llauger*, 14 D.P.R. 548, 560; *Pueblo* v. *Suro*, 47 D.P.R. 834, y *Pueblo* v. *Suárez*, 51 D.P.R. 903.

Aun cuando la prueba del fiscal pudo haber fijado con mayor precisión el lugar donde se cometió el delito, no estamos preparados, sin embargo, para decir que la sentencia de la corte de distrito debe ser revocada por falta de prueba suficiente para demostrar que el delito fué cometido dentro de los límites territoriales de ese distrito judicial.

El segundo señalamiento es que la corte de distrito cometió error y abusó de su discreción al declarar sin lugar una moción en que se solicitaba un pliego de particulares, sin dar al acusado la oportunidad de ser oído.

En la acusación se alegaba que Carmelo Irizarry Picón y José González Martínez acometieron y agredieron a Lino Quiñones con puñal y machete, infiriéndole varias heridas de carácter grave, a consecuencia de las cuales falleció. González solicitó un pliego de particulares:

(*a*) Respecto a cuál de los acusados usó el puñal;

(*b*) Respecto al número de heridas inferidas y la naturaleza de las mismas;

(*c*) Respecto a cuál de las heridas produjo la muerte a Quiñones;

(d) Respecto a si las heridas que produjeron la muerte eran de puñal o de machete.

Conforme ya hemos indicado, esta corte no puede sancionar la práctica de declarar sin lugar una moción de esta índole sin una oportunidad para ser oído. *Pueblo* v. *Ramírez*, 50 D.P.R. 234. Podría admitirse, sin resolverlo, que el acusado tenía derecho a alguna, si no a toda la información solicitada.

La teoría de la defensa fué que González no tomó participación alguna en el asesinato. No se presentó objeción a ninguna parte de la prueba que tendía a demostrar que él esgrimiera el machete mientras Irizarry blandía un puñal y que las heridas de machete fueron la causa principal de la muerte. No se alegó que hubiera sorpresa en ningún momento durante el curso del juicio. La declaración del policía al efecto de que González mismo entregó el machete como el arma utilizada por él, no fué controvertida, a no ser en tanto en cuanto la prueba de la defensa tendió a demostrar que González no fué un agresor. Con la posible excepción de algunas repreguntas hechas a un médico en torno a la naturaleza de las varias heridas, sobre cuál de ellas produjo la muerte a Quiñones y respecto a la forma en que las heridas pudieron ser inferidas, o respecto a las distintas armas con que las mismas pudieron ser producidas—y excepto en tanto en cuanto la prueba de la defensa tendía a sostener su teoría—en ningún momento se suscitó cuestión alguna durante el juicio respecto a si la muerte fué el resultado de heridas de puñal o de machete, o sobre cuál de los acusados usó el puñal y cuál el machete.

No estamos preparados para decir que el error, de haberse cometido, al declarar sin lugar la moción del acusado solicitando un pliego de particulares, sin que se le diera oportunidad para ser oído, sea un error suficiente para que se ordene la revocación.

*La sentencia apelada debe ser confirmada.*